UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MATTHEW PUGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-01890-SEB-MG |
| | ) | |
| LARRY STORM, | ) | |
| MEREDITH, | ) | |
| GEO GROUP, | ) | |
| | ) | |
| Defendants. | ) | |

**Order Screening Complaint and Directing Further Proceedings**

Plaintiff Matthew Pugh is a prisoner currently incarcerated at Westville Correctional Facility. On September 18, 2025, Mr. Pugh filed this civil action under 42 U.S.C. § 1983, alleging that defendants violated his constitutional rights while he was incarcerated at New Castle Correctional Facility ("New Castle"). Since then, Mr. Pugh has filed several discovery motions. After discussing Mr. Pugh's motions for discovery, the Court screens his complaint pursuant to 28 U.S.C. § 1915A(a), (c).

**I.   Motions for Discovery**

Mr. Pugh has filed several motions seeking discovery. Mr. Pugh's motion to subpoena, dkt. 13, asks the Court to issue a subpoena to nonparty Rhonda Smith; his motion for interrogatories, dkt. 15, asks the Court to forward questions to employees at New Castle; his motion to produce documents, 16, seeks data from his tablet from Viapath Technologies; and his motion for telephonic status conference, dkt. 18, asks the Court to schedule a status conference because he has been transferred to Westville Correctional Facility. The Court **denies** the above motions, dkts.

[13], [15], [16], and [18], **as premature**.[1] Because Mr. Pugh is incarcerated, the Court must screen his complaint before it can be served on the defendants, 28 U.S.C. § 1915A, so attempts at discovery are premature. If his claims survive screening, the defendants will be served, appear, and answer. At that point, the Court will issue appropriate orders governing discovery in this case, and Mr. Pugh can serve the defendants' counsel with discovery requests asking for the information he seeks or, if necessary, request the documents from a non-party via subpoena.

## II.    Screening

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

---

[1] Mr. Pugh's motions for discovery do not include any information suggesting that he needs the requested discovery before his complaint is screened and the defendants answer—for example, so that he can identify missing defendants before the expiration of the statute of limitations. If that is the case, he may file a renewed motion explaining why he needs the discovery before his complaint is screened and defendants appear.

2

### A.  The Complaint

Mr. Pugh makes the following allegations against Lt. Larry Storm, Ofc. Meredith, and the GEO Group, which the Court accepts as true at the pleading stage. *See Lisby v. Henderson*, 74 F.4th 470, 472 (7th Cir. 2023).

In July of 2025, Lt. Larry Storm "automatically found" Mr. Pugh guilty of violating the Indiana Department of Correction's Code of Conduct and sanctioned him with six months in restrictive housing as well as phone and commissary restrictions. Dkt. 1 at 3. Mr. Pugh appealed the decision on August 1. *Id.* On August 4, Lt. Storm looked through Mr. Pugh's mail, viewed the appeals, and altered the original conduct reports. *Id.* As a result, Mr. Pugh's appeals were denied, and he was placed in department-wide restrictive housing for the next year. *Id.* at 4. Mr. Pugh alleges that Lt. Storm routinely throws away mail and grievances. *Id.* at 4–5.

During this time, Lt. Storm knew that Mr. Pugh's mattress had fecal waste on it and Mr. Pugh filed grievances related to the issue. *Id.* at 4. Yet, Lt. Storm refused to replace it. After Mr. Pugh had to sleep on the mattress for a month, a non-party officer finally replaced it. *Id.* Mr. Pugh also told Lt. Storm and filed grievances about an issue with ants, but Lt. Storm did not do anything. *Id.*

On August 11, Mr. Pugh went to Lt. Storm's office to retrieve his legal mail. *Id.* at 5. Lt. Storm told Mr. Pugh, "if you know what's good for your well being you won't keep filing reports on our facility and the other staff members." *Id.* (cleaned up).

On August 21, Lt. Storm told Sgt. Titus via email to not give Mr. Pugh a blanket because he had allegedly threatened staff. *Id.* at 4. That same day, a sewage drain overflow caused sewage to enter Mr. Pugh's dormitory, reaching his cell. *Id.* Mr. Pugh told Ofc. Meredith that he needed

3

cleaning supplies to clean his cell, but Ofc. Meredith declined to give him the supplies when he passed out supplies to the rest of the dorm. *Id.*

Overall, Mr. Pugh alleges that the defendants' retaliatory actions are motivated by his status as a sex offender and by the fact that he has filed several complaints about conditions of confinement. *Id.* Mr. Pugh seeks monetary damages and for Lt. Storm to be fired. *Id.* at 6.

### B. Discussion of Claims

Applying the screening standard to the factual allegations in the complaint, certain claims are dismissed while other claims shall proceed as submitted.

**Dismissed Claims**

First, the Court **dismisses** any due process claims against Lt. Storm for finding Mr. Pugh guilty of violating the IDOC's code of conduct. The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Here, Mr. Pugh's complaint does not appear to allege that the imposed sanctions deprived Mr. Pugh of "life, liberty, or property." Without more information, the Court cannot infer that Mr. Pugh's placement in restrictive housing deprived him of liberty. The Constitution does not create a due process liberty interest in avoiding transfer within a correctional facility or remaining in the general prison population. *See Wilkinson v. Austin*, 545 U.S. 209, 222 (2005); *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Instead, incarcerated people are entitled to due process protections only when the more restrictive conditions pose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. After *Sandin*, incarcerated people do not have a liberty interest in avoiding short-term transfer to segregation for administrative, protective, or investigative purposes, even when they are subjected

to harsher conditions as a result. *See, e.g.*, *Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008); *Lekas v. Briley*, 405 F.3d 602, 608–09 (7th Cir. 2005).

Furthermore, if the sanctions deprived Mr. Pugh of good time credit or credit earning class, then the *Heck v. Humphrey* doctrine might bar his claims regarding the disciplinary proceeding. "[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]"). *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). *See Easterling v. Siarnicki*, 435 F. App'x 524, 526 (7th Cir. 2011)) ("*Heck* bars a plaintiff's suit under § 1983 where 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence' unless the plaintiff can show that the conviction or sentence has already been invalidated). Here, if Mr. Pugh's due process claims were successful, it would necessarily imply that the disciplinary conviction was invalid.

Second, the Court **dismisses** Mr. Pugh's claims against GEO Group. Private corporations acting under color of state law, such as GEO Group, are treated as municipalities for purposes of § 1983 and can be sued when their actions violate the Constitution. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). To state a § 1983 claim against a municipality, a plaintiff must allege that the municipality, "either through an express policy or an implied policy of inaction, took 'deliberate' action that was the 'moving force' behind a constitutional injury." *Taylor v. Hughes*, 26 F. 4th 419, 435 (7th Cir. 2022) (quoting *Bd. Of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403–407 (1997)). Here, Mr. Pugh has not identified a GEO Group policy or widespread practice that violated his rights. Thus, any claims against GEO Group must be dismissed.

### **Claims That Will Proceed**

Mr. Pugh's First Amendment retaliation claims against Lt. Storm and Ofc. Meredith may proceed on the basis that they retaliated against him for filing grievances. *See Watkins v. Kasper*, 599 F.3d 791, 794–95 (7th Cir. 2010).

Mr. Pugh's Eighth Amendment conditions-of-confinement claim against Lt. Storm may proceed on the basis that he made Mr. Pugh sleep on a soiled mattress for a month.

Mr. Pugh's Eighth Amendment conditions-of-confinement claim against Ofc. Meredith may proceed on the basis that he intentionally denied Mr. Pugh cleaning products to remove the sewage in his cell.

This summary of claims includes all the viable claims identified by the Court. All other claims have been dismissed. If the plaintiff believes that additional claims were alleged in the complaint, but not identified by the Court, he shall have **through February 9, 2026,** in which to file a motion to reconsider the screening order.

### III.   Conclusion and Service of Process

The Court **denies as premature** the motions for discovery, dkts. [13], [15], [16], and [18].

The following claims are proceeding in this action: First Amendment retaliation claims and Eighth Amendment conditions-of-confinement claims against Lt. Storm and Ofc. Meredith. All other claims have been dismissed. The **clerk is directed** to terminate GEO Group as a defendant on the docket.

The **clerk is directed** pursuant to Fed. R. Civ. P. 4(c)(3) to issue process to Lt. Larry Storm and Ofc. Meredith in the manner specified by Rule 4(d). Process shall consist of the [amended] complaint filed on September 18, 2025, dkt. [1], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

Nothing in this Order prohibits the filing of a proper motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Date:  1/9/2026

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

MATTHEW PUGH
200550
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
5501 South 1100 West
WESTVILLE, IN 46391

Lt. Larry Storm
New Castle Correctional Facility
1000 Van Nuys Road
New Castle, IN  47362

Ofc. Meredith
New Castle Correctional Facility
1000 Van Nuys Road
New Castle, IN  47362

Courtesy copy to:

Adam Garth Forrest
BBFCS ATTORNEYS
27 North Eighth Street
Richmond, IN 47374

The GEO Group, Inc.
New Castle Correctional Facility
1000 Van Nuys Road
New Castle, IN  47362

The GEO Group, Inc.
c/o CORPORATE CREATIONS NETWORK INC.
8520 Allison Pointe Blvd #220
Indianapolis, IN, 46250